UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM MATHEW LEVEQUE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN,<br><br>    Defendant. | Case No.15-cv-03851 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**<br><br>Re: Dkt. Nos. 22, 23 |

Plaintiff Adam Leveque seeks judicial review of the Commissioner of Social Security's denial of his claim for disability benefits. Leveque argues his claim was wrongfully denied because the Administrative Law Judge failed to consider relevant medical impairments, improperly discredited his symptom testimony, failed to consider side effects of his medication, and improperly gave little weight to his treating physician's medical source statement. In addition, Leveque alleges that a previous denial for benefits must be reopened. The Court finds the ALJ improperly discredited Leveque's symptom testimony, and improperly gave little weight to his treating physician's opinion. The Court also finds the ALJ properly considered Leveque's medical impairments and side effects of his medication, and finds no grounds for reopening Leveque's previous denial for benefits.

Therefore, the Court GRANTS in part and DENIES in part the cross-motions for summary judgment. Because the ALJ's reasoning for discrediting Leveque's testimony

Case No. 15-cv-03851 NC

and giving little weight to his treating physician's medical source statement is inadequate, the Court REMANDS this case for further administrative proceedings.

## I. BACKGROUND

On March 31, 2012, Leveque filed for Supplemental Security Income benefits. Administrative Record ("AR") 89. At the time of his application, Leveque was 32 years old. AR 25. Leveque previously filed for social security benefits on June 20, 2011, alleging an onset date of October 31, 2009. AR 85. He was denied benefits on this initial application on October 31, 2011, but some question exists as to whether he was ever notified of this denial. AR 85. Leveque alleged disability based on diabetes and neuropathy in the 2012 application. AR 112. The SSA initially denied him benefits on August 17, 2012, and on reconsideration on March 26, 2013. AR 112, 123. Leveque then requested a hearing before an ALJ, which was held on December 19, 2013, before ALJ Betty Roberts Barbeito. AR 20, 129. The ALJ found Leveque not disabled in a decision dated February 14, 2014, based on a finding he could perform sedentary work. AR 27.

In her analysis, the ALJ used a five-step evaluation process. AR 20. If the ALJ found Leveque disabled or not disabled at any of those steps, the evaluation stopped. AR 21. At step one, the ALJ found Leveque had not engaged in substantial gainful activity since filing his application. AR 22. At step two, the ALJ found Leveque had the severe impairments of "hypertension, diabetes mellitus, type II, with diabetic ketoacidosis and diabetic neuropathy; and polysubstance abuse with physiological dependence." AR 22.

At step three, the ALJ found Leveque did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments ["the listings"] in 20 CFR Part 404, Subpart P, Appendix 1." AR 22. The ALJ considered listing 3.09 for cor pulmonale secondary to chronic pulmonary vascular hypertension, 11.14 for peripheral neuropathies, and 12.09 for substance addiction disorders, but found Leveque's impairments did not singly or in combination equal a listing. AR 22. The ALJ then noted there was no listing for diabetes mellitus, but she had considered this endocrine disorder under other listings. AR 23. At step four, the ALJ found Leveque could not

perform past relevant work.  AR 25.

At step five, however, the ALJ found Leveque could perform other work in the national economy.  AR 26.  Specifically, Leveque could perform sedentary work with some exceptions.  AR 23.  At the hearing, vocational expert Thomas Linvill testified that Leveque could perform sedentary work, including as an escort vehicle driver.  AR 26.

In concluding that Leveque could perform other work, the ALJ first considered whether Leveque had an "underlying medically determinable physical or mental impairment … that could reasonably be expected to produce the claimant's pain or other symptoms;" and second, the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limits the claimant's functioning."  AR 23.  ALJ Barbeito found Leveque partially credible due to inconsistencies in the record.  AR 23.  According to the ALJ, these inconsistencies suggested that contrary to Leveque's allegations, he could perform a "wide range" of everyday activities.  AR 23-24.  As a result, the ALJ found that Leveque's testimony about the intensity, persistence, and limiting effects of his symptoms was not fully credible.  AR 24.

In considering medical evidence, ALJ Barbeito summarized medical records from Hazel Hawkins Memorial Hospital, which showed Leveque's treatment for "uncontrolled diabetes mellitus with associated diabetic ketoacidosis with diabetic neuropathy."  AR 24.  The ALJ noted records of a nerve conduction study and performed electromyography, suggesting "sensori-motor polyneuropathy."  AR 24.  ALJ Barbeito also discussed treating physician Dr. Jiwi Sun's medical source statement, which she gave little weight to.  AR 24.  Dr. Sun opined that Leveque could "lift and/or carry 20 pounds rarely and up to 10 pounds frequently, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour work day, with some postural and manipulative limitations."  AR 24.  The ALJ found Dr. Sun's opinion "inconsistent with the relevant medical evidence of record, including longitudinal records from Hazel Hawkins Memorial Hospital at Exhibits 2F, 8F, and 9F."  AR 24.

Leveque sought review of the ALJ's decision, but the SSA Appeals Council denied

Case No.15-cv-03851 NC           3

his request for review. AR 1. The Appeals Council's denial made ALJ Barbeito's decision the final decision of the SSA Commissioner. AR 1. Both parties consented to the jurisdiction of a magistrate judge. Dkt. No. 9, 13.

## II.  LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995). An ALJ's decision will not be reversed for harmless error. *Burch*, 400 F.3d at 679; *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

## III.  DISCUSSION

Leveque alleges the following legal errors: (1) the ALJ did not properly analyze his primary impairment, diabetes mellitus, type I under the listings; (2) the ALJ found Leveque's testimony lacked credibility and did not consider records regarding a side effect of his medication; (3) the ALJ dismissed treating physician Dr. Sun's opinion; and (4) Leveque never received written notice of the 2011 denial for benefits. Dkt. No. 22.

### A.  The ALJ Properly Considered Leveque's Impairments.

Leveque argues the ALJ's failure to consider his diabetes mellitus, type I, as a listing is reversible error. Dkt. No. 22 at 9-10. Colvin contends Leveque "misrepresented" the ALJ's finding, and that she did refer to the relevant listing, Listing 9.00, in deciding if Leveque's diabetes was of listing-level severity. Dkt. No. 23 at 4. The ALJ stated: "[t]here is no listing specifically addressing diabetes mellitus, however, the claimant's

Case No.15-cv-03851 NC                         4

endocrine disorder was considered under the listings for other body systems." AR 23. The text of Listing 9.00, which includes diabetes mellitus types I and II as endocrine disorders, states: "We evaluate impairments that result from endocrine disorders under the listings for other body systems." Listing 9.00(B). By considering Leveque's diabetes mellitus under the listings for other systems such as 3.09, 11.14, and 12.09, the ALJ properly applied the requirements of that listing. AR 22; *see* Listing 9.00(B)(5).

Furthermore, to the extent the ALJ incorrectly categorized Leveque's diabetes mellitus as type II rather than type I, Leveque failed to identify how an alternative finding would have affected the outcome of this case. Furthermore, Colvin points out that Dr. Genest, the medical testifying expert, found Leveque did not meet any listing. Dkt. No. 23 at 4. Therefore, while the Court is concerned by the ALJ's mistake, it is not reversible error. *Burch*, 400 F.3d at 679.

### B. The ALJ's Finding That Leveque's Symptom Testimony Was Less Than Fully Credible Is Not Supported by Substantial Evidence.

Leveque next argues the ALJ should have credited his symptom testimony because his daily activities were limited by his symptoms, and "significant medical evidence" supported Leveque's testimony. Dkt. No. 22 at 10. Colvin argues the ALJ properly found the activities Leveque engaged in undermined his believability. Dkt. No. 23 at 6-7.

An ALJ must use a two-step analysis to determine a claimant's credibility as to subjective pain or symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). An ALJ first decides if the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted). If the claimant meets the first test, and the ALJ finds no malingering, the claimant's testimony regarding the severity of symptoms may only be rejected for "specific, clear and convincing reasons." *Id.* Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief." *Rashad v. Sullivan,* 903

Case No.15-cv-03851 NC            5

F.2d 1229, 1231 (9th Cir. 1990). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If a reviewing court agrees that the ALJ's finding is so supported, it must be given great weight. *Rashad*, 903 F.3d at 1231.

Here, the ALJ found inconsistencies in the record regarding Leveque's ability to carry out activities of daily living. AR 23. Specifically, the ALJ found Leveque's symptom testimony about the effects of high blood pressure, diabetic neuropathy, and recurrent diarrhea undermined by his ability to prepare basic meals, launder clothes, and grocery shop "without significant issue." AR 23-24. These inconsistencies led the ALJ to conclude Leveque's testimony and statements about the "intensity, persistence and limiting effects" of his symptoms were not fully credible. AR 23-24. In support of this conclusion, the ALJ specifically referred to Leveque's self-reported Exertion Questionnaire, detailing his symptoms and daily activities. AR 24, 190-92.

Leveque argues, however, that the Exertion Questionnaire states numerous ways his symptoms affected his daily life. Dkt. No. 22 at 10; AR 190-92. For example, with respect to laundering clothes, he stated he laundered clothes "about once a week," and the duration for completing that task depended on how he felt. AR 191. While grocery shopping, Leveque reported his "muscles feel sore & cramped," and that "[s]ome days I can[']t walk in the stores because the pain is [too] much." AR 190. As to lifting and carrying items, he stated he could lift and carry groceries and laundry, but "not often" and "not far." AR 191; *see also* AR 77 (Leveque's hearing testimony regarding lifting groceries). Lastly, Leveque reported that his completion of chores depended on his pain. AR 192. In addition, Leveque refers to the results of the electromyograms and electrocardiograms as evidencing his symptoms. *See* AR 221-27, 232, 240-42. As for the electromyogram, Dr. Helman noted findings consistent with sensori-motor

Case No.15-cv-03851 NC            6

polyneuropathy. AR 223. Regarding the electrocardiograms, Leveque cites to no authority or medical record in the administrative record indicating how an electrocardiogram supported his symptom testimony. *See* Dkt. No. 22 at 10.

The Court finds the ALJ's credibility determination of Leveque was not supported by "specific, cogent reason[s] for … disbelief," <u>as to the reasons stated</u>. *Rashad,* 903 F.2d at 1231. Yet there were inconsistencies in Leveque's testimony. For example, Leveque testified that the last time he ingested methamphetamine was in 2011, but in April 2013 methamphetamine was found in his system. AR 73, 361. In addition, Leveque testified at the hearing that he only drove "once in a great while just to, to the store and back," and that those drives last "[m]aybe like two minutes there and two minutes back." AR 77. In Leveque's Exertion Questionnaire, however, he reported being able to drive 15 miles to go grocery shopping, and that he went grocery shopping about once a week. AR 191. The ALJ could have cited to such inconsistencies in the record, but she did not.

On review, the district court may only rely on the reasons actually given by the ALJ for disbelieving a claimant. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). In the Exertion Questionnaire, Leveque noted a number of ways his symptoms affected his completion of activities. AR 190-92. Leveque's statements undermine the ALJ's usage of this document to discredit his claims about his symptoms. AR 190-92. Where an ALJ cites to only to one source in finding a claimant not fully credible, and that source repeatedly undermines the ALJ's conclusion, the Court cannot find the ALJ's decision supported by substantial evidence. The Court instructs the ALJ on remand to reconsider Leveque's symptom testimony, and instructs the ALJ to express any inconsistencies found in the record or in hearing testimony.

### 1. The ALJ Properly Did Not Discuss Dizziness As A Side Effect Of Leveque's Medications.

Leveque alleges the ALJ erred in not mentioning the effects of his medication, gabapentin, in her decision. Dkt. No. 22 at 12. Colvin argues the ALJ evaluated the

Case No.15-cv-03851 NC 7

record as a whole, and her findings about Leveque's limitations considered his pain and other symptoms, including any side effects. Dkt. No. 23 at 7.

In analyzing symptoms related to a medical impairment, the SSA's regulations direct an ALJ to consider "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). If an ALJ disregards a claimant's testimony regarding the "subjective limitations of side effects," the ALJ must support the decision with specific findings justifying that decision. *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988) (remanding where no such findings were made) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).

Leveque argues the opinion of Dr. Sun, along with medical records and other documents note dizziness as a side effect of his medication. Dkt. No. 22 at 11. Leveque correctly notes that the record contains references to dizziness, and that Dr. Sun listed dizziness as a symptom resulting from his medication. *See id.* However, Leveque does not indicate, and the Court did not find evidence in the medical records substantiating this claim other than Dr. Sun's statement. Leveque also did not cite dizziness as a side effect when asked at the hearing. AR 79. Indeed, Dr. Sun's statement is the only time dizziness is mentioned as a factor that might limit Leveque's ability to work. AR 335.

Here, the Court finds the ALJ made no error by not discussing the potential side effect of dizziness because dizziness was never explicitly listed in the record as a factor affecting Leveque's ability to work. *Maguire v. Astrue*, No. EDCV07-1047 AGR, 2008 WL 4793668, at *2 (C.D. Cal. Oct. 31, 2008) (finding no error where ALJ did not address side effects of medication in her decision, where no testimony or other evidence existed that side effects interfered with claimant's ability to work). Leveque did not testify that dizziness was a side effect limiting his ability to work, and Dr. Sun's one word reference to dizziness as a side effect of Leveque's medications that "may" have implications for Leveque's employment is insufficient. AR 335.

### C. The ALJ Improperly Gave Little Weight To Dr. Sun's Medical Source Statement.

Leveque next argues the ALJ erred in rejecting Dr. Sun's medical source statement because no medical records contradicted the doctor's statement, and no medical records supported the ALJ's residual functional capacity determination. Dkt. No. 22 at 11. Colvin argues the ALJ "properly evaluated conflicting medical evidence by summarizing it in detail and interpreting it." Dkt. No. 23 at 5.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). The Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of a treating physician. *Id*. Furthermore, an ALJ may reject a treating physician's opinion, even if it is not contradicted, if it provides clear and convincing reasons for doing so. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating [her] interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ need not accept a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Id.*

The ALJ gave little weight to the medical source statement of Dr. Jiwu Sun, one of Leveque's treating physicians. AR 24. As previously mentioned, Dr. Sun opined that Leveque could "lift and/or carry 20 pounds rarely and up to 10 pounds frequently, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour work day, with some postural and manipulative limitations." AR 24. In other words, Dr. Sun found Leveque's impairments severe enough to find him disabled. AR 335-39. The ALJ found Dr. Sun's opinion "inconsistent with the relevant medical evidence of record, including longitudinal records from Hazel Hawkins Memorial Hospital at Exhibits 2F, 8F, and 9F." AR 24. Instead, the ALJ found Leveque could

perform sedentary work, with limitations. AR 24.

The Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of a treating physician. *Lester*, 81 F.3d at 830. In explaining her decision to reject Dr. Sun's statement, the ALJ found that "the various medical records referenced herein corroborate one another and are not inconsistent with" Leveque being able to perform sedentary work. AR 24. The ALJ continued: "To the extent 'acceptable medical sources,' other than Dr. Sun, offer opinions, they are afforded significant weight given the treating relationship between those sources and the claimant." AR 24. The ALJ did not identify who the other acceptable treating medical sources were, or which records undermined Dr. Sun's statement other than by listing the 97-page Exhibit 2F, the 27-page Exhibit 8F, and 38-page Exhibit 9F as contradictory evidence. AR at 24, 228-324, 345-409. A blanket statement discrediting Dr. Sun's opinion as inconsistent with the record must be more "detailed and thorough" than a cursory reference, without context or detail, to 162 pages worth of medical records. *See Thomas*, 278 F.3d at 957. Nowhere does the ALJ discuss specific medical evidence contradicting Dr. Sun's statement. Such reasoning is neither clear nor convincing. *Lester*, 81 F.3d at 830. Accordingly, the Court finds the ALJ erred in its reasoning for giving little weight to Dr. Sun's medical source statement.

### D. The Court Need Not Reopen the 2011 Denial for Benefits.

Finally, Leveque argues he has a right to have a previous denial of benefits reopened because he was never given written notice of the denial. Dkt. No. 22 at 12. According to Leveque, this failure to notify him of his right to have the claim reopened "was an error of law requiring reversal." *Id*. Colvin argues this claim was waived by Leveque's failure to raise it at his hearing, or in the alternative, that the Court lacks subject matter jurisdiction to hear it because Leveque does not state a colorable constitutional claim. Dkt. No. 23 at 7-8.

Normally, federal courts only exercise judicial review over social security cases where there is a "final decision of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g). Where the requirements of § 405(g) do not exist, a federal

Case No.15-cv-03851 NC             10

court has subject matter jurisdiction only if a claimant asserts a "colorable constitutional claim." *Califano v. Sanders*, 430 U.S. 99, 109 (1977).  An applicant for social security benefits has a protected property interest in those benefits, and so courts consider what process is due. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990).  Such process must be "reasonably calculated to afford parties their right to present objections." *Id*. (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The Ninth Circuit previously found a colorable claim where denial of disability benefits notices did not specify how a claimant could appeal a decision, and were "misleading." *Id*.  Later, the Ninth Circuit found a colorable constitutional claim meriting the reopening of a case because, at the time of the denial, a claimant suffered from a mental impairment and was not represented by counsel. *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001).

Here, Leveque applied for disability benefits on June 20, 2011, alleging an onset date of October 31, 2009.  AR 85.  The SSA initially denied Leveque benefits on October 31, 2011.  AR 85.  Leveque notes there is no indication he was notified of his right to reopen his case and appeal the denial.  Dkt. No. 22 at 12.  In reviewing the record, the Court has not found any mailing notifying Leveque of the 2011 denial, in contrast with the evidence of the denial notice of Leveque's 2012 application, which is the basis of this appeal.  AR 112-16.  However, no complaint about this lack of notice was made at the 2013 hearing, nor in Attorney Weathered's appeal brief to the SSA Appeals Council.  AR 210-11.  The Court notes that Attorney Weathered represents Leveque in this motion, and that this is the first time this issue has been raised. *See* Dkt. No. 22.

The Court rejects Leveque's reopening argument, and notes that claimants must raise issues at their administrative hearings to preserve them for appeal in federal court. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), *as amended* (June 22, 1999).  The Court also rejects Leveque's unsupported contention that the alleged failure to notify him of the 2011 denial somehow merits "reversal" of the ALJ's decision in this case.  Dkt. No. 22 at 12.  Though the Court recognizes that Leveque may not have been notified of the 2011 denial of benefits, there are no allegations that he was mentally ill, *Udd*, 245 F.3d at 1099, and he

Case No.15-cv-03851 NC               11

has been afforded multiple opportunities to present this issue prior to this motion. Leveque, a represented claimant, had the opportunity to argue this issue at an administrative hearing and before the Appeals Council.  It is not now unfair to refuse to hear this claim raised for the first time on appeal.

## IV.  CONCLUSION

The Court finds that as to the ALJ's credibility determination of Leveque and the weight given to a Dr. Sun's opinion, the ALJ's opinion was not supported by substantial evidence in the record.  Thus, the Court GRANTS in part Leveque's motion for summary judgment and DENIES in part the Commissioner's motion for summary judgment and REMANDS this case for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated:  September 9, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge